# Illinois Official Reports

## Supreme Court

---

### *Gurba v. Community High School District No. 155*, 2015 IL 118332

---

| | |
|---|---|
| Caption in Supreme Court: | JEFF GURBA *et al.*, Appellees, v. COMMUNITY HIGH SCHOOL DISTRICT NO. 155 *et al.*, Appellants. |
| Docket Nos. | 118332, 118369 cons. |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of McHenry County, the Hon. Michael J. Chmiel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Dean W. Krone, Robert E. Swain, Steven M. Richart and Kerry P. Burnet, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellant Board of Education of Community High School District No. 155.<br><br>Michael G. Nerheim, Special State's Attorney, of Waukegan (Carla N. Wyckoff and Lisle A. Stalter, Assistant State's Attorneys, of counsel), for appellant Leslie Schermerhorn.<br><br>Thomas R. Burney, Thomas C. Zanck and James L. Wright, of Zanck, Coen, Wright & Saladin, P.C., of Crystal Lake, and Jerome S. Schain, Michael R. Burney and Patrick T. Brankin, of Schain, Banks, Kenny & Schwartz, Ltd., of Chicago, for appellee Jeff Gurba *et al*.<br><br>Victor P. Filippini, Jr., and Betsy L. Gates, of Evanston, for appellee City of Crystal Lake. |

Ares G. Dalianis, Brian P. Crowley and Scott R. Metcalf, of Franczek Radelet P.C., of Chicago, for *amicus curiae* Illinois Association of School Boards *et al.*

Laurie Reynolds, of University of Illinois College of Law, of Champaign, *amicus curiae.*

Roger Huebner, of Springfield, for *amicus curiae* Illinois Municipal League.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1   The question presented in this consolidated appeal is whether municipal zoning ordinances govern a school district's construction of football stadium bleachers on school property. The appellate court below affirmed the judgment of the circuit court holding that a school district is subject to, and its school board must comply with, local governmental zoning and storm water restrictions. 2014 IL App (2d) 140098. For the reasons that follow, we affirm the appellate court's judgment.

¶ 2                                     BACKGROUND

¶ 3   Crystal Lake South High School (Crystal Lake South) is located in the city of Crystal Lake, Illinois (City), a municipal corporation with home rule authority situated in McHenry County. The area surrounding the school is zoned "R-2 residential single family," and the school constitutes a legal, nonconforming use. The Crystal Lake South campus is owned by Community High School District No. 155 (District) and operated by the Board of Education of Community High School District No. 155 (Board).

¶ 4   In 2013, the Board decided to replace the bleachers at the Crystal Lake South football stadium after a failed structural inspection. The Board's plan involved switching the locations of the home and visiting bleachers so that the new home bleachers would now be adjacent to residential property next to the school. The new home bleachers would be larger, higher, and closer to the property line than the existing bleachers abutting the residences. The Board applied for a permit for the project from Leslie Schermerhorn, the McHenry County Regional Superintendent of Schools. Schermerhorn approved the plans and issued a building permit pursuant to section 3-14.20 of the School Code (105 ILCS 5/3-14.20 (West 2012)). The District began work on the project without notifying the city of Crystal Lake or seeking a building permit, zoning approval, or storm water management approval from the City.

¶ 5        Upon learning of the project, the City informed the Board that it was required to comply with the provisions of the Crystal Lake Unified Development Ordinance, which regulates zoning and land use, as well as the City's storm water management ordinance. The City ordered the Board to stop construction on the project until it had obtained a special-use permit, a storm water permit, and zoning variances. The Board disregarded the order and proceeded with construction of the new bleachers. The Board took the position that a school district's construction on property used for school purposes is not subject to the zoning authority of the local municipality.

¶ 6        At the same time, three plaintiffs who own residential properties adjacent to the school filed suit against the Board and the District, seeking to privately enforce the City's zoning restrictions pursuant to section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2012)). Plaintiffs alleged that the new, larger, bleachers did not comply with local zoning regulations and negatively affected the value of their properties.[1] The Board subsequently filed a third-party complaint for declaratory judgment against the city of Crystal Lake and Schermerhorn asking the circuit court to decide whether the City has authority over the District to enforce its zoning and storm water ordinances.

¶ 7        The parties to the third-party complaint filed cross-motions for summary judgment. The circuit court of McHenry County awarded summary judgment in favor of the City. The appellate court affirmed the circuit court's order. 2014 IL App (2d) 140098.[2] The Board and Schermerhorn filed petitions for leave to appeal in this court pursuant to Illinois Supreme Court Rule 315(a) (Ill. S. Ct. R. 315(a) (eff. July 1, 2013)). We allowed the petitions and consolidated the two appeals.

¶ 8        We allowed the Illinois Association of School Boards, the Illinois Association of School Administrators, and the Illinois Association of School Business Officials to file a brief as *amici curiae* in support of appellants, and we allowed the Illinois Municipal League and Professor Laurie Reynolds to file separate *amicus curiae* briefs in support of the City. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 9                                              ANALYSIS

¶ 10       Under section 2-1005(c) of the Code of Civil Procedure, summary judgment may be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). When parties file cross-motions for summary judgment, they mutually concede that there are no genuine issues of material fact and that only a question of law is involved. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Our review of an order granting summary judgment is *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010). The issues in this case involve statutory analysis and interpretation, presenting questions of law which are subject to *de novo* review. *People v. Elliott*, 2014 IL

_____

[1]Appended to this opinion are copies of photographs from the record depicting the view from plaintiffs' back yards before and after the construction of the new bleachers.

[2]The underlying enforcement action filed by the private property owners remains pending in the circuit court.

- 3 -

115308, ¶ 11. In construing a statute, our primary goal is to ascertain and effectuate the legislature's intent. *Id.* The best indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Id.*

¶ 11    At issue is whether a school district is subject to local zoning and land use regulations in the course of exercising its statutory powers to construct new facilities on school property. Zoning is primarily a legislative function, and it is within the province of local governmental bodies to determine the use of land and to establish zoning classifications. *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 307 (1979). In the absence of express statutory exclusions, municipalities are empowered by the Illinois Municipal Code to regulate all land uses within their territory. See 65 ILCS 5/11-13-1 *et seq.* (West 2012); *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 430-31 (2005); *People of the Village of Cahokia v. Wright*, 57 Ill. 2d 166, 168 (1974).

¶ 12    The General Assembly has chosen to exempt certain entities from municipal zoning regulations under the Municipal Code. For instance, section 11-13-1(12) of the Municipal Code prohibits a home rule or non-home rule municipality from banning the display of outdoor political campaign signs on residential property. 65 ILCS 5/11-13-1(12) (West 2012). Another section of the Municipal Code restricts municipalities' zoning powers with respect to antennas or antenna support structures that are used for amateur radio communications. 65 ILCS 5/11-13-1.5 (West 2012). However, there is no statutory provision restricting the authority of a municipality to regulate zoning or storm water management on school property. Thus, under the plain terms of the Municipal Code, school property is subject to municipal zoning laws.

¶ 13    Moreover, as a home rule municipality, the City has broad powers to perform any function pertaining to its government and affairs, including, but not limited to, the power to regulate for the protection of the health, safety, morals, and welfare of the public. Ill. Const. 1970, art. VII, § 6(a); *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001). Included within the realm of home rule powers are municipal development regulations such as zoning ordinances, which "undoubtedly pertain to local affairs." *Schillerstrom Homes*, 198 Ill. 2d at 290. See also *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 19. The General Assembly may choose to restrict a home rule unit's powers by "provid[ing] specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). If there is no express preemption by the General Assembly, a home rule unit may "exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). See *Schillerstrom Homes*, 198 Ill. 2d at 287. The General Assembly has not enacted any statute expressly preempting or limiting a home rule unit's zoning powers over public school property. We conclude, therefore, that it is within the City's home rule authority to impose its zoning ordinances on the District and the Board.

¶ 14    Despite the lack of any statutory provision expressly exempting school property from municipal or home rule zoning authority, the Board nevertheless argues that the City's zoning powers do not extend to property owned by a school district. The Board contends that the City's zoning and storm water ordinances unduly interfere with the General Assembly's constitutional authority to regulate the public education system. We disagree. Article X, section 1, of the Illinois Constitution requires the State to "provide for an efficient system of

- 4 -

high quality public educational institutions and services" in order to fulfill the fundamental goal of "the educational development of all persons to the limits of their capacities." Ill. Const. 1970, art. X, § 1. In service of this goal, the General Assembly has "plenary power over the Illinois school system." *Board of Education of School District No. 150 v. City of Peoria*, 76 Ill. 2d 469, 476 (1979). The General Assembly has exercised its plenary power by enacting a comprehensive statutory scheme for the creation, management, and operation of Illinois schools, including various provisions setting forth the powers, duties, and obligations of school boards. *Id.*

¶ 15    There is no support for the Board's contention that the application of local zoning laws to school district property unduly interferes with the General Assembly's plenary power over public education. To the contrary, section 10-22.13a of the School Code evinces the General Assembly's intent that school districts are subject to local zoning laws. This section authorizes a school board "[t]o seek zoning changes, variations, or special uses for property held or controlled by the school district." 105 ILCS 5/10-22.13a (West 2012). It would be unnecessary for the General Assembly to authorize a school district to seek zoning changes if it did not intend for school property to be subject to local zoning ordinances in the first place. See 2011 Ill. Att'y Gen. Op. 11-005, at 3. The Board argues that section 10-22.13a is permissive, not mandatory, because it references a "power" of a school board rather than a "duty." Thus, the Board would find that section 10-22.13a empowers a school district to request zoning changes, variances, or special use permits from the local government if it so desires but does not require it to do so. We reject this interpretation as an unreasonable reading of the statute. The more natural reading is that section 10-22.13a confers upon a school board the specific power to request zoning changes or variances because it falls within the jurisdiction of the local zoning regulations.

¶ 16    The Board offers another interpretation of the zoning change provision in section 10-22.13a, suggesting that it applies only to property owned by a school district which is not used for "school purposes." The Board's reading is not supported by the plain statutory language. It is well settled that a court may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 36. There is no indication that the General Assembly intended for section 10-22.13a to apply only to property not used for "school purposes."

¶ 17    Further support for our conclusion that the City's zoning ordinances do not unduly interfere with the educational goals of the General Assembly is found in *Wilmette Park District v. Village of Wilmette*, 112 Ill. 2d 6 (1986). In that case, the park district filed a complaint against the village claiming it was exempt from the village's zoning ordinance and, therefore, did not have to apply for a special-use permit to install new lights on its property. This court disagreed, holding that:

> "[n]either the Illinois Municipal Code nor the Park District Code provides park districts with immunity from the zoning ordinances of their host municipality. ***
>
> *** Absent an explicit statutory grant of immunity, the mere fact that the park district, a local unit of government, has a statutory duty to operate its parks cannot be extended to support the inference that it can exercise its authority without regard to the zoning ordinances of its host municipality." *Id.* at 14-15.

¶ 18     The park district in *Wilmette Park District* argued similarly to the Board in this case that the village's zoning laws interfered with the park district's statutory authority over park operations. *Id.* at 18. This court rejected that argument, holding that the village's interest did not "originate from a desire to 'manage' park land or projects, but rather from its legitimate interest and authority in planning and regulating the use of land within the entire community to minimize abrasive activities and promote use consistent with the community character and expectations of its residents." *Id*. In the same way, the City's regulation of school-owned property for the benefit of the community as a whole is not equivalent to the regulation of public education activities such as school curricula, administration and staffing.

¶ 19     The Board next argues that school construction is not subject to local zoning laws because the School Code limits municipalities' review and inspection of school construction plans pursuant to the "Health/Life Safety Code for Public Schools" (Health/Life Safety Code). Section 2-3.12 of the School Code (105 ILCS 5/2-3.12(c) (West 2012)) authorizes the State Board of Education to create the Health/Life Safety Code, which is referred to in various statutory provisions as a school "building code." 23 Ill. Adm. Code 180; 105 ILCS 5/2-3.12, 3-14.20, 3-14.21 (West 2012). The School Code authorizes a municipality to register with the regional superintendent of schools if it wishes to receive notice of school construction plans or inspect construction sites. 105 ILCS 5/3-14.20, 3-14.21(d) (West 2012). The municipality may then object in writing to the plans, referencing the specific provisions of the Health/Life Safety Code upon which the objections are based. *Id.*

¶ 20     The Board and Schermerhorn contend that the foregoing provisions delineate the only opportunities for a municipality to participate in the construction of public school facilities. They argue that the City is estopped from objecting to the bleacher construction project or attempting to assert its zoning laws because it never registered with the regional superintendent to receive notice of school construction plans pursuant to section 3-14.20 of the School Code. This argument misconstrues the Health/Life Safety Code, whose purposes and goals are distinct from local zoning regulations.

¶ 21     It is clear from the plain language of its relevant provisions that the Health/Life Safety Code is a statewide building code which sets forth minimum construction standards and building specifications for public school facilities. Neither the building code itself nor the statutes referencing the code mention zoning, land-use, or storm water management. These issues are local matters ordinarily regulated by counties and municipalities. See 65 ILCS 5/11-13-1 *et seq.* (West 2012) (authorizing zoning by municipalities); 55 ILCS 5/5-12001 *et seq.* (West 2012) (authorizing zoning by counties); 70 ILCS 605/1-1 *et seq.* (West 2012) (Illinois Drainage Code).

¶ 22     The issues involved in zoning—the size, height, and location of buildings, setbacks from property lines, and the due process rights of neighboring property owners—are not addressed by a building code. The Health/Life Safety Code is concerned with building and construction standards to protect the health, safety, and welfare of those who use public school facilities. See 105 ILCS 5/2-3.12(a) (West 2012). It does not address the health, safety, and welfare of the community as a whole. The City's decision not to be notified of building code matters did not waive or diminish the City's interest in or authority over zoning and storm water management issues on school-owned property. Thus, the Health/Life Safety Code does not preempt or limit the City's authority over zoning and land use issues within its jurisdiction.

¶ 23    As a home rule municipality, the City has the power to regulate land use within its jurisdiction through zoning. There is no statute which exempts school district property from the exercise of the City's zoning laws. Accordingly, we hold that the bleacher construction project undertaken by the Board and the District is subject to the City's zoning and storm water ordinances.

¶ 24                               CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the appellate court affirming the trial court's order granting summary judgment in favor of the city of Crystal Lake and decreeing that the Board of Education of Community High School District No. 155 is subject to the City's zoning and storm water ordinances.

¶ 26    Affirmed.