# Illinois Official Reports

## Appellate Court

***Centro Medico Panamericano, Ltd. v. Benefits Management Group, Inc.*,**
**2016 IL App (1st) 151081**

| | |
|---|---|
| Appellate Court Caption | CENTRO MEDICO PANAMERICANO, LTD., an Illinois Corporation, d/b/a Fullerton Kimball Medical and Surgical Center, Plaintiff-Appellant, v. BENEFITS MANAGEMENT GROUP, INC., an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1081 |
| Filed | August 2, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-10605; the Hon. Lynn M. Egan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas L. Prochnow, John A. Roberts, Colin Patrick O'Donovan, and Caroline H. Sear, all of Faelgre Baker Daniels LLP, of Chicago, for appellant.<br><br>Michael Resis and Kenneth A. Perry, both of SmithAmundsen LLC, of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1       Plaintiff Centro Medico Panamericano, Ltd., an Illinois corporation, owned an outpatient surgical facility (Fullerton Kimball Medical & Surgical Center) providing services for a patient referred by his physician. Centro Medico billed defendant Benefits Management Group, Inc., the third-party administrator for the patient's insurer, over $85,000, expecting 60% reimbursement under the patient's insurance plan. Benefits Management paid out a little more than $6000 after reducing the total billed by "usual, customary, and reasonable" limits and deducting the patient's copay amount.

¶ 2       Centro Medico sued Benefits Management under a promissory estoppel theory for the difference between the amount billed and the amount paid, alleging that a Benefits Management's representative promised Centro Medico that the services it intended to provide to the insured patient were covered, and after Centro Medico provided the services, Benefits Management "refused to provide the promised coverage." Centro Medico further alleged that Benefits Management expressed the amount of benefits as "a percentage of Centro Medico's billed charges." Benefits Management moved for summary judgment under section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2010)) on two bases: (i) the claim was preempted by the provisions in the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1144(a) (2006)) and (ii) Centro Medico failed to demonstrate a clear, unambiguous promise on which it reasonably and foreseeably relied. The trial court ruled that the cause was not preempted and granted summary judgment to Benefits Management based on the promissory estoppel theory.

¶ 3       We agree with the trial court that Centro Medico failed to establish the first element of a promissory estoppel claim, that Benefits Management made a clear and unambiguous promise regarding the reimbursement amount. The reimbursement rate of 60% for out-of-network coverage was unambiguous. The real crux of the issue is Benefits Management claims as the basis for calculating the reimbursement amount the "usual, customary, and reasonable" charges, while Centro Medico uses its total charges exceeding $85,000 as the basis for the calculation. This discrepancy demonstrates an ambiguity in the promise.

¶ 4       Additionally, we find as a matter of law that Centro Medico did not demonstrate its reliance on any alleged promise was reasonable. Thus, the trial court properly granted summary judgment.

¶ 5       Because we affirm the trial court's grant of summary judgment on the promissory estoppel claim, we need not address Centro Medico's additional contention that federal preemption of the state claim under ERISA did not apply.

¶ 6       Before we continue, we wish to point out that the parties each used their own nomenclature for identifying the entities, variously referring to the plaintiff as "CMP" and "FKMSC" and the defendant as "BMG" and "Benefits Management." Inconsistent party designations are unhelpful to the court, distracting, and disorienting when switching from one brief to another. We urge parties to consider carefully the ramifications of using radically dissimilar designations.

¶ 7                                    BACKGROUND

¶ 8        Centro Medico's facility provides operating rooms, recovery rooms, equipment, nurses, and supplies for surgical procedures. The facility was an out-of-network provider for a patient who was referred to it to have a spinal cord stimulator implant. Before the surgery, the patient assigned his insurance benefits to Centro Medico.

¶ 9        Benefits Management is a third-party administrator of health and welfare benefits plans that receives and processes health insurance claims submitted to the patient's insurer. Benefits Management contracted with Health Contract Partners (HCM), a customer service center for health-related businesses, to help manage Benefit Management's call overflow.

¶ 10       According to Centro Medico's second amended complaint, its representatives called Benefits Management to verify insurance coverage for the patient, providing his name, insurance information, and the services to be provided. Centro Medico alleged that Benefits Management "always represented" that the individuals were covered for the services to be rendered, did not disclose any limitations on coverage, and expressed the amount of benefits as a percentage of the facility's billed charges.

¶ 11       James Gallery, president of Benefits Management, testified in a deposition that Benefits Management used HCM to handle phone calls from providers regarding patients' insurance eligibility. The HCM employees who took the calls had no access to benefit plans and read from a specific script. Only a Benefits Management employee would have talked about benefit coverage. Gallery stated that "reasonable and customary" is a term used "to reimburse at what would be the normal, reasonable charge" based on the amount allowed by Blue Cross in the geographic area or based on Medicare reimbursement for the same services.

¶ 12       In her deposition, Mary Jane Flojo, the office manager at Centro Medico and supervisor of the billing department, testified she did not participate in the phone calls between Centro Medico and Benefits Management and her information regarding the charges came from insurance verification worksheets. The amounts charged for this particular procedure can vary within a certain range, and no single amount would be considered usual, customary, and reasonable. Flojo agreed that she would expect Centro Medico would only be reimbursed up to the amount that its submitted charges were usual, customary, and reasonable. Further, "reasonable people can disagree" regarding what usual, customary, and reasonable charges should be.

¶ 13       Dr. Tian Xia referred certain patients to Centro Medico (owned by his father, Dr. Renlin Xia). Dr. Tian Xia did not know how the facility determined its charges for a particular procedure and agreed that reasonable people could disagree as to what was usual, customary, and reasonable charges. Dr. Renlin Xia testified he did not know, nor did he have an opinion about, what would be a usual and customary amount to charge. He made the business decision to bill the insurance company 2½ times the cost of a device.

¶ 14       Centro Medico's medical insurance coordinator, Griselda Perales, explained the following office procedures. When Centro Medico received a referral for surgery, the referring doctor would fax the patient's history, including insurance information. Centro Medico would then call the insurance company for verification of "benefits and coverage." The verification form, the assignment of benefits, the patient's contract, and medical information regarding treatment would be placed in the patient's "binder."

¶ 15 On December 28, 2007, Perales called Benefits Management regarding coverage for this patient. Perales did not remember what was said during the call but referred to typed notes on the verification form she filled out during the call. Perales stated she spoke to someone named "Kami" who told her that "facility coverage was at 60 percent of the billed amount for the facility." Perales understood this to mean that "the patient would be covered at 60 percent for bill charges for the procedure *** at our facility." The form itself indicated only that "Facility Coverage" was "60%."

¶ 16 Kami Truxell testified in a deposition that she worked for HCM screening calls to Benefits Management. Truxell did not remember receiving a call regarding the extent of coverage for this patient but testified that she did not have access to individual insurance policies or coverage information about eligibility.

¶ 17 Centro Medico proceeded with the surgery and later billed the patient almost $86,000. Benefits Management reduced this total by "usual, customary, and reasonable" limits, resulting in eligible charges totaling $10,204.59. The "Explanation of Benefits" indicated the amount due to Centro Medico was reduced to a "usual and customary" amount. Benefits Management deducted some $4000 for coinsurance and paid approximately $6000.

¶ 18 Centro Medico sued Benefits Management under a theory of promissory estoppel, alleging that a Benefits Management's representative orally promised to pay for the services. The complaint alleged that before providing services the facility's representatives called Benefits Management to confirm insurance coverage by giving the patient's name, insurance information, and the services to be provided. The complaint further alleged that Benefits Management "always represented" that the individuals were covered for the services to be rendered and expressed the amount of benefits as a percentage of the facility's "billed charges." Further, Centro Medico asserted Benefits Management's agent did not disclose any limitations on coverage. Centro Medico claimed it "reasonably relied" on Benefit Management's coverage verifications when it provided services to the patient. The complaint further asserted that Benefits Management was estopped to act contrary to the statements its agents made to Centro Medico "confirming the insurance coverage, stating the specific amounts of benefits available and the specific amount of out-of-pocket maximums, and not notifying [Centro Medico] of limitations on coverage and payment that Benefits Management knew or should have known existed when it verified coverage and quoted benefits to [Centro Medico]."

¶ 19 Benefits Management moved for summary judgment (735 ILCS 5/2-1005 (West 2010)), arguing (i) ERISA expressly preempted Centro Medico's claim and (ii) the parties never agreed on a specific amount of the charge or the specific amount of reimbursement. Benefits Management asserted that none of Centro Medico's claims were denied in full; all were paid according to the plan's requirements. The trial court denied the motion in part, finding the claim was not preempted under ERISA because the claim could be resolved without interpreting the terms of the ERISA-regulated health plan. The trial court granted summary judgment in part, finding Centro Medico did not establish an unequivocal oral promise to pay 60% of the total charges billed.

¶ 20                                                    ANALYSIS

¶ 21 Before considering the merits of this appeal, we address Benefits Management's request to strike Centro Medico's "entire 'nature of the case' " under Illinois Supreme Court Rule

- 4 -

341(h)(2) (eff. Jan. 1, 2016). The Illinois Supreme Court Rules have the force of law and must be obeyed. *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8 (citing *People v. Campbell*, 224 Ill. 2d 80, 87 (2006)). We agree the nature of the case section, consisting of three paragraphs, is argumentative and does not properly satisfy the rule. Nevertheless, " '[w]here violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted.' [Citation.]" *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1101 (2008). Accordingly, we will not strike that portion of the brief. Instead, we will ignore the improper argument presented in this section and disregard any fact or claim not supported by the record. *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8; *Hurlbert*, 386 Ill. App. 3d at 1101.

¶ 22                                                    Promissory Estoppel

¶ 23        Centro Medico argues that promissory estoppel applies because Benefits Management made an unambiguous promise to pay 60% of this patient's medical bills on which it relied, and therefore, the trial court erred when it granted summary judgment to Benefits Management.

¶ 24        Summary judgment under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)) is proper where the pleadings, admissions, depositions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10. Summary judgment should be granted only when the right of the moving party is free and clear from doubt. *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 18. Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied. *American Access Casualty Co. v. Griffin*, 2014 IL App (1st) 130665, ¶ 19. We review *de novo* a trial court's grant of a summary judgment motion. *Gurba*, 2015 IL 118332, ¶ 10.

¶ 25        Promissory estoppel is an affirmative cause of action in Illinois (*Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 61 (2009)), possibly allowing recovery despite the absence of a contract. *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 33. To establish a claim for promissory estoppel, the plaintiff must prove (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such a promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to its detriment. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 95 (citing *Newton Tractor Sales, Inc.*, 233 Ill. 2d at 51, and *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10 (1990)). The existence of the elements of promissory estoppel presents questions of fact for the trial court's determination (*First National Bank of Cicero v. Sylvester*, 196 Ill. App. 3d 902, 911 (1990)), which we will not reverse unless it is against the manifest weight of the evidence. *Cullen Distributing, Inc. v. Petty*, 164 Ill. App. 3d 313, 318 (1987).

¶ 26        Centro Medico's office manager's testimony bolstered Benefits Management's position that the adjusted amount of usual, customary, and reasonable charges, not the billed charges, should serve as the basis for the computation of a reimbursement amount. She testified that the amount charged for this particular procedure could vary and no single amount would be considered usual, customary, and reasonable. She also would expect Centro Medico would be reimbursed up to the amount that its submitted charges were usual, customary, and reasonable.

Not only did the office manager admit that "usual, customary, and reasonable" is not a fixed amount, the referring doctor also agreed that "reasonable people can disagree" regarding what would be usual, customary, and reasonable charges.

¶ 27 In its brief Centro Medico asserts that the office manager's testimony lacks foundation because she was not on the verification call and therefore cannot testify as to its contents. Benefits Management responds that Centro Medico forfeited this point because Centro Medico's response to the summary judgment motion did not include any objections to her testimony. See *Urban v. Village of Inverness*, 176 Ill. App. 3d 1, 6-7 (1988) ("The sufficiency of the depositions cannot be tested for the first time on appeal where no objection was made either by a motion to strike or otherwise."). We agree with Benefits Management. Forfeiture aside, this testimony simply bolstered the referring doctor's testimony that "usual and customary" charges for a particular procedure may vary. The unfulfilled requirement of promissory estoppel is an unambiguous promise to pay at a rate calculated using the billed charges, a promise not made here.

¶ 28 Centro Medico's medical insurance coordinator, Griselda Perales, confirmed in her deposition that she spoke to a person named Kami. Perales asked Kami to "give [her] the benefits and eligibility for the patient." She testified that Kami then asked for the patient's name, date of birth, identification number, diagnosis, and the type of procedure.

¶ 29 Reading from her notes, Perales provided additional details about items mentioned during the telephone conversation:

> "So she gave me the patient's effective date. I asked her if there was any pre-existing period, she said no. If there was a deductible, $600. She was not able to inform me if he had met it or not. Facility coverage was at 60 percent of the billed amount for the facility. $5,500 out of pocket, was not able to inform me if patient had met it. Lifetime max. If it was a family or single policy. If a referral was required or not. If pre-cert was required or second opinion was required or not."

Perales did not remember exactly what was said during the conversation six years earlier, but she testified that her "*understanding*" was that Benefits Management would reimburse at a rate of 60% of the billed charges. The form itself, however, indicated "Facility Coverage" was "60%," not "60% of the billed charges."

| | IN / OF NETWORK |
|---|---|
| Effective Date | 11-01-2006 |
| Pre-existing Period | NO |
| Deductible | 600.00 MET: NOT ABLE TO TELL ME |
| Surgical Coverage | |
| Facility Coverage | 60% |
| Anesthesia Coverage | |
| Out of Pocket | 5,500.00 MET: NOT ABLE TO TELL ME |
| Life Time Max | 1M |
| Single / Family Plan | FAMILY |
| Referral Form | NO |
| Pre-Cert 2nd Opinion | NO |
| Confirmed by | KAMI 12-28-2007 |
| Verified By | GRACIE 12-28-2007 |
| Mailing Address | BCBS CLAIMS DEPT |

Perales's testimony as to her understanding at the time is not substantiated by the notes she took contemporaneously.

¶ 30        The complaint also alleged that Kami Truxell not only confirmed coverage, she also stated the specific amounts of benefits available and the specific amount of out-of-pocket maximums. Centro Medico claimed that Benefits Management did not notify it regarding limitations on coverage and payment that Benefits Management knew, or should have known, existed when it verified coverage and quoted benefits. No proof of these allegations was made. Perales's testimony was based on her note-taking and did not indicate specific amounts or reveal any limitations on coverage, and Truxell had no recollection of her conversation with Perales.

¶ 31        Benefits Management argues that a 2015 case involving Centro Medico is substantially similar to this case. *Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of the Health & Welfare Department of the Construction & General Laborers' District Council*, 2015 IL App (1st) 141690. There, Centro Medico was, like here, an out-of-network provider and had not negotiated a rate with the defendant insurer. *Id.* ¶ 5. Centro Medico called the insurer to verify whether a patient's insurance covered a particular procedure. *Id.* This court found summary judgment had been properly granted because Centro Medico failed to establish that the defendant made an unambiguous promise to pay. *Id.* ¶ 13. The court specifically noted that Centro Medico failed to provide any evidence, "such as testimony from any of its claim representatives or an actual transcript of the calls," which would have suggested that the defendant's representatives made Centro Medico an unambiguous oral promise. *Id.*

¶ 32        While Centro Medico did provide testimony from its medical insurance coordinator, she testified in terms of her "understanding" of the alleged agreement. But, her "understanding" falls short of constituting a clear and unambiguous promise from Benefits Management because, as we have noted, she did not indicate on the form that the Benefits Management agent had promised a percentage of the "billed amount." This statement alone is, by its very terms, indicative of ambiguity; Perales's understanding is subjective. Thus, we conclude that Perales's testimony did not provide the proof that the Benefits Management agent made such a promise.

¶ 33        Centro Medico attempts to distinguish *Laborers' Welfare* on the basis that the term "usual, customary, and reasonable" charges was part of the benefits plan that the parties had discussed, whereas here the term was never mentioned. Centro Medico's approach misses the point. The issue is the promise itself and whether coverage was 60% of whatever charges Centro Medico decided to bill or 60% of a different total altogether. Using a percentage number without establishing the basis for a computation does not inform the parties who are left wondering, 60% of what? There was no unambiguous promise answering that question, although both parties understood the charges would be "usual, customary, and reasonable."

¶ 34        Even were we to assume an unambiguous promise was made, Centro Medico has failed to sufficiently establish reasonable and justifiable reliance. A plaintiff's reliance must be both reasonable and justifiable (*Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 800 (2005)), "similarly to the elements required in a claim for fraud." *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 91. In determining whether a party's reliance was reasonable, the court must consider all of the facts that the party knew, as well as those facts that the party could have discovered through the exercise of ordinary prudence. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 456 (2004). Although normally a question of fact, a court can determine reasonable reliance as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." (Internal quotation marks omitted.) *Id.* See *Cozzi Iron & Metal,*

*Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (under Illinois law question of plaintiff's reliance on defendant's false statement can be determined as matter of law); *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, ¶ 114 (summary judgment proper because plaintiffs' reliance on defendants' statement was not reasonable as matter of law).

¶ 35        The *Laborers' Welfare* court's analysis of reasonable and justifiable reliance applies equally here: "[i]t is, however, *not* common or expected that an insurer or benefit plan would consent to paying a provider based on the provider's unilaterally determined usual and customary charge. Plaintiff has provided no compelling reason why insurance companies, as a standard industry practice, would agree to terms that so unilaterally favor medical institutions to the detriment of the insurance companies." (Emphasis in original.) *Laborers' Welfare*, 2015 IL App (1st) 141690, ¶ 15.

¶ 36        Centro Medico did not prove the first or second elements of the doctrine of promissory estoppel. Benefits Management did not make a clear and unambiguous promise regarding the reimbursement amount for the patients' surgery. Nor did Centro Medico provide a "compelling reason" why Benefits Management would ever agree to pay Centro Medico, an out-of-network provider, whatever amount it "unilaterally determined" was its usual and customary charge.

¶ 37        The parties both believed the reimbursement *rate* would be 60% for out-of-network coverage, but there was no agreement regarding the *basis* for calculating the reimbursement amount. The promise was both unclear and ambiguous, demonstrated by the discrepancy between Benefits Management's claim that the "usual, customary, and reasonable" charges should be the basis for the calculation while Centro Medico used its total charges and claimed 60% of that total. And Centro Medico did not show that it reasonably and justifiably relied on a nonspecific oral representation regarding the extent of coverage.

¶ 38        Affirmed.