**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220394-U

Order filed October 3, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| DEBBIE HILL, DIANE KILCOYNE, and KEITH MARCIANO, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| SHARI BRINKMAN, Trustee of the Marciano Family Trust, and MARCIANO FAMILY TRUST, | ) ) ) ) | Appeal No. 3-22-0394 Circuit No. 20-CH-613 |
| Defendants | ) ) | |
| (Shari Brinkman, Defendant-Appellee). | ) ) | Honorable John C. Anderson, Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a civil case involving a trustee's alleged breach of fiduciary duty, the appellate court held that the trial court correctly found that the trustee of a family trust had not breached her fiduciary duty by paying herself compensation from the trust for personal services that she provided in caring for her mother, who was one of the settlors of the trust. The appellate court, therefore, affirmed the trial court's ruling, which granted defendant's motion for summary judgment on plaintiffs' breach of fiduciary duty claim and denied plaintiffs' cross-motion for the same relief.

¶ 2    Plaintiffs, Debbie Hill, Diane Kilcoyne, and Keith Marciano filed an amended complaint in the trial court alleging that their sister, defendant, Shari Brinkman, breached her fiduciary duty as the trustee of the Marciano Family Trust, a trust established by the parties' parents, by paying herself compensation for personal services that she provided in taking care of the parties' bedridden mother, who later passed away. Defendant denied that she breached her fiduciary duty and the parties filed cross-motions for summary judgment. Following full briefing and a hearing on the matter, the trial court found that defendant had not breached her fiduciary duty, granted defendant's motion for summary judgment on that basis, and denied plaintiffs' cross-motion for the same relief. Plaintiffs appeal. We affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    William and Beverly Marciano were married and had five children: Dawn Talbot, Debbie Hill, Diane Kilcoyne, Keith Marciano, and Shari Brinkman. In October 2007, William and Beverly established the Marciano Family Trust by executing a declaration of trust that had been prepared for them by an attorney. Among other things, the trust declaration provided that if either William or Beverly was unable to properly administer any payments that were due them, the trustee was to distribute for their benefit "so much or all of the net income and principal of the trust as the [t]rustee believe[d] to be desirable for [William's and Beverly's] support, comfort, companionship, enjoyment and medical care, taking into consideration resources known to the acting [t]rustee[.]" In keeping with that purpose, the trust declaration provided further (in Article IV(M)) that during William's and Beverly's lifetimes, the trustee had the power to employ "any person or persons to attend to [William's and Beverly's] maintenance, comfort, companionship, enjoyment and medical care[.]" After William and Beverly passed away, the trustee was to distribute any remaining trust property (principal and/or income) to William and

2

Beverly's children (plaintiffs, defendant, and Talbot). The trust declaration nominated defendant to serve as first successor trustee, if neither William nor Beverly was able to serve as trustee, and provided (in Article I(D)) that defendant was to receive a gift of $50,000 per year from the trust if defendant was serving as successor trustee and providing full-time care to William and/or Beverly and had either quit her current job to do so or was unemployed.

¶ 5 In April 2014, William and Beverly sold their home and moved in with defendant. They lived with defendant in her home for the rest of their lives. In December 2017, William passed away. Upon William's death, defendant became the trustee of the trust because Beverly had Alzheimer's disease and was bedridden. Beverly died two years later, in December 2019.

¶ 6 In June 2020, plaintiffs (Debbie, Diane, and Keith) filed their original complaint in this case seeking an accounting of the trust from defendant (Shari) from the date of William's death to the present date.[1] In August 2021, defendant filed a formal written accounting of the trust. The accounting showed that for the time period at issue, defendant paid herself from the trust a flat fee of $300 per week for caring for Beverly and $900 per month for Beverly's rent. In addition to those amounts, in December 2019, shortly before Beverly's death, defendant paid herself approximately $66,000 from the trust for the time she spent taking care of Beverly in 2018 (defendant wrote herself 12 checks from the trust account, one check for each month in 2018). About four months later, defendant paid herself an additional approximately $65,000 from the trust for the time she spent taking care of Beverly in 2019 (defendant again wrote herself 12

---

[1]The remaining sibling, Dawn Talbot, was not involved in this case in the trial court proceedings and has not been involved in this case on appeal. Although the record is not clear on the matter, there is some indication that Talbot may have predeceased one or both of her parents or disclaimed her interest in the trust.

checks from the trust account, one for each month in 2019). Later that month, plaintiffs filed objections to various aspects of the accounting.

¶ 7        In April 2022, plaintiffs filed an amended complaint alleging that defendant had breached her fiduciary duty as trustee of the trust, was guilty of self-dealing, and had operated under a conflict of interest by paying herself large sums of money from the trust as compensation for the personal services she provided in caring for Beverly after William's death, even though defendant had continued to work a full-time job. Plaintiffs alleged further that as beneficiaries of the trust, they were damaged by the payments defendant made to herself from the trust in breach of her fiduciary duty and sought to have the trial court award plaintiffs damages for that breach.[2]

¶ 8        The following month, in May 2022, plaintiffs filed a motion for summary judgment on their amended complaint. Plaintiffs alleged in their motion that neither the trust declaration nor Illinois law allowed defendant to pay herself from the trust for the personal services she rendered while taking care of Beverly. Defendant filed a cross-motion for summary judgment and took the opposite position. The parties attached to their summary judgment motions numerous supporting documents, including copies of the declaration of trust, the formal accounting that defendant filed, an itemized statement of the time periods that defendant spent caring for Beverly and the amounts that defendant charged the trust for that care, and the deposition of defendant that had been taken in July 2021 pertaining to this matter.

¶ 9        Of relevance to this appeal, defendant testified in her deposition that she had taken care of her parents before they moved in with her in April 2014 and continued to do so after that time. When William and Beverly moved in with defendant, Beverly was already in a wheelchair and

---

[2]Although plaintiffs requested damages in their amended complaint, in the motion for summary judgment that plaintiffs later filed, they asked the trial court to order defendant to return to the trust all of the money that defendant had been paid for personal services.

later became bedridden in 2016. When William passed away in December 2017, Beverly had Alzheimer's disease, was bedridden, and was not in an appropriate condition to serve as trustee of the trust, so defendant took over as successor trustee at that time.

¶ 10　　　　Defendant worked a full-time job for at least the past five years doing accounting work and did not quit her job when she was caring for Beverly. Defendant paid herself $300 per week from the trust for Beverly's care and $900 per month for Beverly's rent up until the time of Beverly's death but stated in her deposition that the care she provided to Beverly consisted of a lot more than $300 per week. According to defendant, she provided care to Beverly every day, although there were other care providers (Bright Start, Beatriz, and Katie) that were employed to care for Beverly as well. Defendant contemporaneously kept track of the time she spent caring for Beverly on a time sheet that was later provided to plaintiffs in the trial court proceedings. Defendant acknowledged during her deposition testimony that some of the time periods listed on the time sheet were time periods when both Beverly and defendant would have been sleeping. Defendant kept a monitor in her bedroom and would wake up if she heard Beverly. Defendant charged a reduced rate for those periods but still charged a fee because she was required to be at the residence at that time for Beverly's care, even if Beverly did not wake up during that particular night.

¶ 11　　　　According to defendant, when the trust was initially set up, there was some discussion between defendant and her parents about defendant quitting her job, caring for her parents, and receiving a $50,000 gift per year from the trust. That provision was never carried out, however, because the situation changed quite a bit from the time that the trust was written (October 2007) until William and Beverly moved in with defendant (April 2014). By the time that William and Beverly moved in with defendant, Beverly was already in a wheelchair and later became

5

bedridden in 2016. When that happened, defendant was still working and William needed additional care. Bright Start and Beatriz were brought in as additional caregivers. William liked Beatriz a lot and wanted Beatriz to keep caring for Beverly, in addition to Katie (a family member), defendant, and William. The trust was never amended after that point to determine how much defendant would be compensated for providing care to Beverly. Defendant charged the trust $20 per hour for the time periods when defendant was awake and $13 per hour for the time periods when defendant and Beverly were asleep overnight. The rates were decided based on a discussion that defendant had with her attorney. When defendant was asked during her deposition if an agreement had ever been reached for her to be compensated more than $300 per week, defendant stated merely that she had spoken to her attorney about the matter.

¶ 12     In July 2022, a hearing was held on the cross-motions for summary judgment. Prior to the hearing, the parties fully briefed the issues that were before the trial court. At the conclusion of the hearing, the trial court took the case under advisement. Two months later, the trial court issued a written decision, finding that the plain language of article IV(M) of the trust declaration allowed defendant to compensate herself from the trust for the personal services she rendered while providing care for Beverly. The trial court, therefore, granted defendant's motion for summary judgment and denied plaintiffs' cross-motion for the same relief. Plaintiffs appealed.

¶ 13                                    II. ANALYSIS

¶ 14     On appeal, plaintiffs argue that the trial court erred in granting summary judgment for defendant on plaintiffs' claim for breach of fiduciary duty. Plaintiffs assert that summary judgment should not have been granted for defendant and should have been granted for plaintiffs instead because under the plain language of the trust declaration and the applicable Illinois law, defendant breached her fiduciary duty, was guilty of self-dealing, and operated under a conflict

6

of interest when she paid herself large sums of money from the trust as compensation for the personal services that she provided in caring for Beverly after William's death, even though defendant continued to work her full-time job. Plaintiffs ask, therefore, that we reverse the trial court's ruling, which granted defendant's motion for summary judgment on plaintiffs' breach of fiduciary duty claim and denied plaintiffs' cross-motion for the same relief.

¶ 15        Defendant argues that the trial court's ruling was proper and should be upheld. In support of that argument, defendant asserts first that the trial court correctly concluded that defendant was entitled under the trust declaration to reasonable compensation for the personal services she provided in taking care of Beverly and correctly granted summary judgment for defendant on that basis. According to defendant, the trial court's ruling in that regard was consistent with: (1) the purpose of the trust to provide for the support, comfort, companionship, and medical care of the settlors (William and Beverly); (2) the plain language of the trust declaration, which allowed defendant as trustee to hire "any" person to care for the settlors; (3) the applicable law on this issue, which permitted the trustee to hire herself to perform personal services for the settlors and to be compensated for those services; (4) sound public policy, since the settlors in this case intended to reside with defendant, to have defendant care for them, and to reasonably compensate defendant for those services; and (5) common sense, as adopting plaintiff's position in this case would mean that any person other than defendant could provide care for the settlors in defendant's home and be reasonably compensated for doing so. Second, and in the alternative, defendant asserts that the trial court's grant of summary judgment for defendant should be upheld in this case based upon the doctrine of *laches* because plaintiffs knew since November 2018 when defendant tendered her handwritten accounting to plaintiffs' attorney that defendant was paying herself reasonable compensation from the trust for the personal services she provided

in caring for Beverly but did not claim until April 2022 when they filed their amended complaint that defendant had breached the terms of the trust by doing so. In keeping with that assertion, defendant maintains that had plaintiffs raised a timely objection to the payments, defendant could have hired 24-hour caregivers and freed herself from the difficult job of caring for Beverly. Thus, for both of the reasons stated, defendant asks that we affirm the trial court's ruling, which granted defendant's motion for summary judgment on plaintiffs' breach of fiduciary duty claim and denied plaintiffs' cross-motion for the same relief.

¶ 16　　　　In reply to defendant's *laches* argument, plaintiffs assert that in November 2018, they did not know, and could not have known, that defendant would later pay herself approximately $70,000 per year from the trust for taking care of Beverly in 2019 and 2020. Thus, plaintiffs contend that their claim was not barred by the doctrine of *laches*. For that reason and for the reasons that plaintiffs initially asserted, plaintiffs again ask that we reverse the trial court's ruling, which granted defendant's motion for summary judgment on plaintiff's breach of fiduciary duty claim and denied plaintiffs' cross-motion for the same relief.

¶ 17　　　　Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2022); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Ordinarily, the purpose of summary judgment is to determine whether there are any genuine issues of material fact that should be submitted to a trial in the case that is currently before the court. See *Adams*, 211 Ill. 2d at 42-43; *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986); *Burke v. Grillo*, 227 Ill. App. 3d 9, 14 (1992). When the parties file cross-motions for summary judgment, however, they agree that there are no genuine issues of

8

material fact and that only questions of law are involved and invite the trial court to decide those questions based upon the record. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 28; *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10. In appeals from summary judgment rulings, the standard of review is *de novo*. *Adams*, 211 Ill. 2d at 43. *De novo* review also applies to issues of trust interpretation, which are considered to be questions of law that are appropriate for determination in summary judgment proceedings. See *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 18        In this particular case, plaintiffs claimed that defendant breached her fiduciary duty as trustee of the trust. It is well established that a trustee owes a fiduciary duty to the beneficiaries of the trust. *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 303 (1993). In keeping with that duty, a trustee is obligated to carry out the trust according to its terms; to act with the highest degree of fidelity and good faith; to serve the interests of the beneficiaries with complete loyalty, excluding all self-interest; and to refrain from dealing with the trust property for his own individual benefit. See *id.* at 303-04. An exception exists, however, to that general rule—a trustee may occupy conflicting positions in administering or managing a trust when the trust instrument contemplates, creates, or sanctions that conflict of interest. *Id.* at 304. A trustee's obligation of undivided loyalty may be waived by the settlor of the trust in two ways, either expressly, by specifically conferring upon the trustee the power to act in a dual capacity, or by implication, by knowingly placing the trustee in a position that might conflict with the interests of the beneficiaries. *Id.* When a conflict of interest is approved or created by the settlor of a trust,

the trustee will not be held liable for his or her allegedly disloyal conduct unless the trustee has acted dishonestly or in bad faith, or has committed an abuse of discretion. See *id.* In addition, where the trust instrument approves the conflict of interest, the burden of proof remains on the party challenging the trustee's conduct since there is no presumption against the trustee despite the trustee's divided loyalty. *Id.*

¶ 19    To determine whether the trust declaration in the instant case allowed defendant to receive compensation from the trust for the personal services she rendered, we must apply the rules of trust interpretation. In construing a trust, a court applies the same rules of construction that apply to wills and other contracts. *Stein v. Scott*, 252 Ill. App. 3d 611, 614 (1993). The main goal in interpreting a trust is to ascertain and give effect to the settlor's intent, if not contrary to public policy. See *id.* The settlor's intent must be determined from the plain and ordinary meaning of the trust document itself, viewing the document as a whole. *Id.* at 614-15; *Harris Trust and Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). A court should attempt to give effect to each word and phrase in the trust document and should not adopt a construction that renders any portion of the document's language meaningless or nonsensical. *Stein*, 252 Ill. App. 3d at 614-16. Extrinsic evidence may not be admitted to aid in construction of a trust document, unless the court determines that the document is ambiguous and that the settlor's intent cannot be ascertained therefrom. See *id.* at 615. A trust instrument is ambiguous only when its language is reasonably or fairly susceptible to more than one interpretation and not merely because the parties disagree on the meaning of the language. See *id.*

¶ 20    In the present case, after reviewing the declaration of trust that William and Beverly executed, we find that the plain language of the declaration is clear and unambiguous and that it allowed defendant to hire herself to provide care for Beverly in defendant's home and to pay

10

herself from the trust reasonable compensation for providing those personal services. The trust declaration in this case specifically allowed the trustee to hire "any" person, in the trustee's discretion, to provide care for Beverly. Contrary to plaintiffs' implied assertion on appeal, we cannot construe that clear and unambiguous language to mean "any person, except the trustee." Thus, we believe that the plain language of the trust shows that William and Beverly contemplated that defendant would hire herself to provide for their care and would pay herself reasonable compensation for doing so and that William and Beverly expressly waived that conflict of interest. We conclude, therefore, that defendant did not breach her fiduciary duty to plaintiffs by paying herself reasonable compensation for the personal services that she provided in caring for Beverly. See *Dick*, 242 Ill. App. 3d at 304. Accordingly, we find that the trial court properly granted defendant's motion for summary judgment on plaintiffs' breach of fiduciary duty claim and properly denied plaintiffs' motion for the same relief.

¶ 21 In reaching that conclusion, we note that plaintiffs did not assert in the trial court or on appeal that the amount of compensation defendant received was unreasonable for the personal services that defendant provided. In addition, although plaintiffs primarily rely on *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 465 (2000), for their assertion that a trustee may not be compensated from the trust for personal services that the trustee provided, we believe that plaintiffs reliance in that regard is misplaced. Although not entirely clear, by our view, *Lampe* stands for the proposition that a trustee may not be paid trustee fees for personal services rendered. See *id.* at 465-66. That was not the factual situation that was before the trial court in the present case where defendant paid herself reasonable compensation from the trust for the personal services she provided but was not seeking to legally justify those payments as trustee fees. Rather, defendant asserted that the fees were for personal services and that the payment was

11

authorized by the provisions of the trust. The trial court agreed with that assertion, and its conclusion in that regard was supported by the plain language of the trust declaration and the exception to the general rule as noted above. See *Dick*, 242 Ill. App. 3d at 304. As the trial court correctly indicated, the gift provision in the trust declaration had no application here as defendant had not fulfilled the requirements for receiving the gift and had not sought to be paid the gift.

¶ 22    Having found that the trial court properly determined that defendant had not breached her fiduciary duty as trustee of the trust and that the trial court properly granted summary judgment for defendant on that basis (and denied plaintiffs' cross-motion for the same relief), we need not determine whether plaintiffs' claim was also barred under the doctrine of *laches*, as defendant asserts in the alternative in this appeal.

¶ 23                                        III. CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 25    Affirmed.

12