# Illinois Official Reports

## Appellate Court

---

### *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639

---

| | |
|---|---|
| Appellate Court Caption | SALETECH, LLC, Plaintiff-Appellant, v. EAST BALT, INC., EAST BALT OF EASTERN EUROPE, LLC, and LOU-EL, LTD., All Individually and d/b/a East Balt Ukraine, and EAST BALT UKRAINE, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2639 |
| Filed | October 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the failure of an agreement plaintiff, a Ukrainian company, had with another Ukrainian company for the distribution of bakery products, the trial court properly dismissed plaintiff's amended complaint against three American companies that were not signatories to the distribution agreement but did have business connections to the Ukrainian signatory and agreed to honor the agreement if plaintiff would assist them in investigating and obtaining proof of suspected improprieties in the management of the signatory business, since plaintiff's amended complaint alleged breach of contract under a ratification theory, an agency theory, an alter ego theory, and promissory estoppel and unjust enrichment, but failed to allege that the added defendants had an agency relationship with the signatory and that they retained a benefit or expressed an intent to be bound by the distribution agreement, and plaintiff did not allege facts supporting the claim that the signatory was defrauding its creditors or that defendants received any benefit from plaintiff's assistance in the investigation. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-18; the Hon. Thomas L. Mulroy, Jr., Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Kenneth C. Apicella, of Drost, Gilbert, Andrew & Apicella, LLC, of Palatine, for appellant. |
| | Kenneth L. Schmetterer and Eric M. Roberts, both of DLA Piper LLP, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Lavin and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    After an agreement governed by Ukrainian law to distribute bakery products made by a Ukrainian company went sour, plaintiff, also a Ukrainian company, sued for breach of contract but never served the complaint on the Ukrainian company. Instead, plaintiff pursued three American companies that were not signatories to the contract asserting theories of agency, contract ratification, alter ego, promissory estoppel and unjust enrichment. The trial court granted defendants' motion to dismiss the third amended complaint under section 2-615 of the Illinois Code of Civil Procedure (Code) with prejudice. 735 ILCS 5/2-615 (West 2012). Plaintiff now asks us to reverse the order of dismissal and permit the case to proceed to discovery. We affirm, finding that the third amended complaint failed to state a cause of action for breach of contract under theories of agency, ratification, and alter ego, and also failed to state a claim for promissory estoppel and unjust enrichment.

¶ 2                                    BACKGROUND
¶ 3    Plaintiff Saletech, LLC (Saletech), is a distribution company organized under the laws of the Ukraine. Defendants are (i) East Balt Ukraine (EB Ukraine), organized under the laws of the Ukraine and registered with the Ukraine government as an "Enterprise with Foreign Investments," and three American entities–(ii) East Balt, Inc. (EB Inc.), a Delaware corporation with its principal place of business in Chicago, which owns commercial bakeries globally and is the parent company of (iii) East Balt of Eastern Europe, LLC (EB Europe), an Illinois limited liability company with its principal place of business in Chicago, which in turn, owns EB Ukraine. (Another defendant, Lou-El, Ltd., a subsidiary of EB Inc. and a Delaware company with its principal place of business in Chicago, had no ownership interest in or involvement with EB Ukraine and was not the subject of any claims or allegations in the third amended complaint. Accordingly, we affirm the dismissal of Lou-El, Ltd.)

¶ 4      On August 12, 2011, Saletech entered into an agreement with EB Ukraine to be the exclusive distributor of its bakery products. Under the agreement, which was amended on September 15, 2011, Saletech would buy and distribute on a monthly basis a minimum of 4 million units of EB Ukraine's bakery items. Saletech contends that less than two months later, in November, EB Ukraine breached the agreement. Saletech contacted EB Ukraine's general director but when the problem was not resolved, Saletech's vice president, Simon Gordon, contacted Edward Gin, EB Inc.'s vice president and chief financial officer, who put Gordon in touch with Stuart Lee, EB Inc.'s executive vice president of the European region. According to Gordon, Lee told him EB Inc. and EB Europe suspected improprieties by management at EB Ukraine, and stated that if Saletech would help investigate and obtain proof of those improprieties, EB Ukraine's management team would be replaced and the terms of the exclusive distribution agreement would be honored. Saletech agreed to help and claims it incurred all sorts of expenses, including frequent flights from the Ukraine to Chicago to meet with EB Inc. representatives and the cost of hiring armed security, which it claimed it needed to protect its offices and personnel after EB Ukraine sent threatening text messages.

¶ 5      The record does not reveal whether the investigation uncovered any improprieties or whether EB Ukraine's management was replaced but despite Saletech's assistance, EB Ukraine remained in breach of the agreement. On January 3, 2012, Saletech filed a three-count complaint against EB Inc., individually and doing business as EB Ukraine, alleging breach of contract, promissory estoppel, and unjust enrichment. EB Inc. was served with the complaint; EB Ukraine was not. On February 27, 2012, EB Inc. filed a motion to dismiss the complaint. Next, Saletech filed an amended complaint, which named two additional defendants, EB Eastern Europe and Lou-El, Ltd., individually and on behalf of EB Ukraine, and again raised breach of contract, collateral estoppel, and unjust enrichment claims. Defendants filed a motion to dismiss, which the trial court granted, with 28 days leave to file an amended complaint. Saletech filed its second amended complaint on September 28, 2012. In count I of its six-count complaint, Saletech alleged breach of contract against EB Ukraine. The remaining five counts against the other defendants alleged breach of contract under a ratification theory (count II), an agency theory, (count III), and an alter ego theory (count IV). Saletech also brought claims for promissory estoppel (count V) and unjust enrichment (count VI). All of the defendants except EB Ukraine were served. The served defendants filed a motion to dismiss counts II through VI, which the trial court again granted with leave to amend.

¶ 6      On January 18, 2013, Saletech filed its third amended complaint. In count I, Saletech alleged breach of contract against EB Ukraine. Counts II through V alleged breach of contract by ratification against EB Inc. (count II) and EB Europe (count III), breach of contract by actual or apparent agency by EB Inc. (count IV), and breach of contract by EB Europe as an alter ego of EB Ukraine (count V). Saletech also raised a promissory estoppel claim against EB Inc. (count VI) and an unjust enrichment claim against EB Inc. and EB Europe (count VII). Again, all of the named defendants except EB Ukraine were properly served.

¶ 7      On January 28, 2013, the served defendants moved to dismiss Saletech's third amended complaint under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)), which allows a party to combine a section 2-615 motion to dismiss and a section 2-619 motion for involuntary dismissal in one pleading. On April 9, 2013, after oral arguments, the trial court entered an order dismissing counts II through VII of Saletech's third amended complaint under

section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)). (Because EB Ukraine had not been served, the court did not address count I of the amended complaint.) As to counts II and III alleging ratification and count IV alleging agency, the trial court found Saletech failed to properly plead an agency relationship between EB Ukraine and EB Inc. or EB Europe. The court found that the request by EB Inc. and EB Europe for Saletech's assistance in investigating improprieties by EB Ukraine and their assurances to Saletech that the agreement would then be honored did not establish an agency relationship or constitute ratification because the defendants could not ratify acts that were not done on their behalf. The trial court also found Saletech's complaint failed to properly allege EB Ukraine as the alter ego of EB Europe (count V).

¶ 8        The court found Saletech's amended complaint failed to allege a claim for promissory estoppel (count VI) because it did not specify promises made by EB Inc. or detriment Saletech incurred based on those alleged promises. As for the unjust enrichment claim (count VII), the trial court found that Saletech failed to allege a specific benefit EB Inc. and EB Europe unjustly retained to Saletech's detriment. Noting that the amended complaint constituted the fourth attempt by Saletech to plead its claims against EB Inc. and EB Europe, the trial court dismissed counts II through VII with prejudice. The trial court also noted that although Lou-El, Ltd., was named as a defendant, Saletech made no allegations against it in its third amended complaint and dismissed Lou-El, Ltd., from the case with prejudice.

¶ 9        Saletech requested an alias summons for defendant EB Ukraine, which the trial court granted. But EB Ukraine was never served, and on July 18, 2013, the trial court dismissed count I of the third amended complaint for want of prosecution. Saletech filed a timely notice of appeal on August 16, 2013.

¶ 10                                    ANALYSIS

¶ 11       A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint based on defects apparent from its face (*Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13) and the relevant inquiry is whether the allegations, considered in the light most favorable to the plaintiff, are sufficient to state a cause of action. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 61. "In ruling on a section 2-615 motion, the court may not consider affidavits, products of discovery, documentary evidence not incorporated into the pleadings as exhibits, or other evidentiary materials." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the complaint and asserts an affirmative matter outside the pleading that avoids the legal effect of or defeats the claim. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20. We review the dismissal of a claim under either section 2-615 or section 2-619(a)(9) *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Although defendants filed a section 2-619.1 motion to dismiss, the trial court dismissed counts II through VII under section 2-615 of the Code, and thus we must determine whether any of the allegations, when considered in a light most favorable to Saletech, suffice to state a cause of action.

¶ 12                                    Agency

¶ 13       Saletech first contends count IV of its amended complaint properly alleged EB Ukraine entered the exclusive distribution agreement not on its own behalf but as the actual or apparent agent of EB Inc.

- 4 -

¶ 14    "An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf." *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 65 (citing *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1064 (1996)). An agent's authority may be either actual or apparent, and actual authority may be either express or implied. *C.A.M. Affiliates, Inc. v. First American Title Insurance Co.*, 306 Ill. App. 3d 1015, 1021 (1999). Actual express authority exists where "the principal explicitly grants the agent the authority to perform a particular act." *Id.* Apparent authority, by contrast, arises when the principal holds an agent out as possessing the authority to act on its behalf, and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 34. To hold the principal liable under an apparent agency theory, the aggrieved third party must prove: "(1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third party's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third party's detrimental reliance on the agent's apparent authority." *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 390 (1991) (citing *Northern Trust Co. v. St. Francis Hospital*, 168 Ill. App. 3d 270, 278 (1988)).

¶ 15    While the existence of an agency relationship is generally a question reserved to the trier of fact, a plaintiff must still plead facts, which, if proved, could establish the existence of an agency relationship. *Knapp v. Hill*, 276 Ill. App. 3d 376, 382 (1995). The party seeking to charge the alleged principal carries the burden of proving the existence of an agency relationship and the scope of its authority. *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 75 (2008). A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to liability. *Lang v. Silva*, 306 Ill. App. 3d 960, 972 (1999). Generally, actual authority of an agent requires the authority be founded on the principal's words or acts, not on the agent's. *Wadden v. Village of Woodridge*, 193 Ill. App. 3d 231, 239 (1990). Nevertheless, the existence of an agency relationship may be demonstrated by circumstantial evidence, including the situation of the parties, their acts, and other relevant circumstances. *Prodromos v. Everen Securities, Inc.*, 341 Ill. App. 3d 718, 724-25 (2003).

¶ 16    Saletech first contends it properly pled that EB Ukraine was the actual agent of EB Inc. when it entered into the exclusive distribution agreement. We disagree. Saletech's amended complaint merely stated, "At the time the Agreement was entered into, East Balt Ukraine was acting as the apparent or actual agent of East Balt, Inc." Saletech failed to allege facts showing that EB Inc. gave EB Ukraine authority to enter the agreement on its behalf. The exclusive distribution agreement identifies Saletech and EB Ukraine as the parties to the agreement and nowhere indicates EB Ukraine was signing on EB Inc.'s behalf. Saletech also failed to allege any communications with EB Inc. before entering into the agreement. Saletech did file a response to defendants' motion to dismiss, which included an affidavit from Simon Gordon, Saletech's vice president, stating before entering the agreement he met with officers and employees of EB Inc. to discuss the exclusive distribution agreement and that EB Ukraine's general manager told him that before he could sign the agreement it would "have to be confirmed in Chicago." As noted, in ruling on a section 2-615 motion, the court may not consider affidavits, products of discovery, documentary evidence not incorporated into the pleadings as exhibits, or other evidentiary materials.

- 5 -

¶ 17    Saletech also asserts the circumstances under which the parties operated created an agency relationship, noting that the certificate of exclusivity states that EB Ukraine is a "[b]ranch of East Balt, Inc." and the EB Inc. website lists Dnepropetrovsk, Ukraine, as one of its facilities. Defendants concede that EB Inc. is the parent company of EB Europe, which owns EB Ukraine, but there are no factual allegations in Saletech's complaint to establish that EB Ukraine was acting as an agent for EB Inc. when it signed the exclusive distribution agreement.

¶ 18    Saletech alternatively contends even if EB Ukraine lacked actual authority, it had apparent authority to enter into the exclusive distribution agreement on behalf of EB Inc. But again, Saletech's third amended complaint fails to allege facts showing EB Inc. consented to or knew EB Ukraine entered into the agreement on its behalf, that Saletech had a good-faith belief that EB Ukraine had authority to bind EB Inc. or that it relied on EB Ukraine's authority to its detriment. In the absence of these necessary allegations, the trial court did not err in finding Saletech failed to properly allege an agency relationship between EB Ukraine and EB Inc. and in dismissing count IV of the amended complaint with prejudice.

¶ 19                                    Ratification

¶ 20    Saletech next contends it properly stated claims against EB Inc. and EB Europe for breach of contract based on their alleged ratification of the exclusive distribution agreement. Specifically, Saletech asserts EB Inc. and EB Europe ratified the agreement by telling Saletech's vice president that if Saletech assisted in the investigation of improprieties by EB Ukraine management, the terms of the agreement would be honored. Thus, Saletech argues the trial court erred in dismissing counts II and III of its amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)).

¶ 21    For ratification to be effective, the principal, with full knowledge of an unauthorized transaction, must manifest an intent to abide and be bound by it either retaining its benefits or taking a position inconsistent with nonaffirmance. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 56 (2009). "[R]atification does not result from the affirmance of a transaction *** unless the one acting as agent purported to be acting for the ratifier." (Internal quotation marks omitted.) *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1051 (1998).

¶ 22    As noted, there is no evidence that EB Ukraine was acting as EB Inc.'s agent when it entered into the exclusive distribution agreement with Saletech. Also, although EB Europe is the parent company, there were no allegations in the complaint that EB Ukraine was acting as an agent for EB Europe when it entered the agreement. Further, nothing in the third amended complaint supports a finding that once EB Inc. and EB Europe learned of the agreement when they were notified by Saletech of the breach, they retained any benefits of the agreement or took any steps manifesting an intent to be bound by it. Telling Saletech's vice president that if Saletech helped investigate EB Ukraine, the terms of the agreement would be honored was not a promise by EB Inc. or EB Europe to be bound by and fulfill the agreement. Because defendants also told Saletech that the management of EB Ukraine would be replaced, a more reasonable interpretation is that the new management would be honoring the terms of the agreement. Absent allegations that either defendant retained a benefit or expressed an intent to be bound by the distribution, the trial court did not err in dismissing counts II and III of Saletech's amended complaint.

## Alter Ego

In count V, Saletech alleged a claim for breach of contract against EB Europe under the theory that EB Ukraine was the alter ego of EB Europe, its parent company, thereby warranting piercing of the corporate veil.

A primary purpose of doing business as a corporation is to insulate stockholders from unlimited liability for corporate activity. *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526 (2002). In certain circumstances, however, the corporate form may be disregarded, such as where the corporation stands as the alter ego or the business conduit of another, dominating personality. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033 (2007). "This doctrine fastens liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's business." *Peetoom*, 334 Ill. App. 3d at 527. "A party seeking to pierce the corporate veil has the burden of making 'a substantial showing that one corporation is really a dummy or sham for another' [citation], and courts will pierce the corporate veil only reluctantly [citation]." *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68 (1994).

Particularly, in breach of contract cases, courts apply an even more stringent standard to determine when to pierce the corporate veil than in tort cases. *Tower Investors*, 371 Ill. App. 3d at 1033 (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.85, at 692 (rec. vol. 1999)). The reason is that a party seeking relief for a breach of contract presumably entered into the contract with the corporate entity voluntarily and knowingly and expecting to suffer the consequences of the limited liability status of the corporate form. *Id.* (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.85, at 692 (rev. vol. 1999)).

Illinois courts will pierce the corporate veil where: (1) a unity of interest and ownership appears so strong that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) under the circumstances, adhering to the fiction of a separate corporation would promote injustice or inequitable circumstances. *Tower Investors*, 371 Ill. App. 3d at 1033-34 (citing *Pederson v. Paragon Pool Enterprises*, 214 Ill. App. 3d 815, 819-20 (1991)). In a breach of contract case, " ' "additional compelling facts," ' " such as a finding of fraud, may also be required. *Id.* at 1034 (citing *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 205-06 (1981)). "Where there is no evidence of any misrepresentation, no attempt to conceal any facts, and the parties possess a total understanding of all of the transactions involved, Illinois courts will not pierce the corporate veil in a breach of contract situation." *Tower Investors*, 371 Ill. App. 3d at 1034.

In its third amended complaint, Saletech alleged EB Ukraine was the alter ago of EB Europe because the two entities had commingled funds as a means of defrauding creditors, had a unity of interests so that their separate identities ceased, and had the same Chicago business address. In its brief, Saletech further alleged EB Ukraine's bylaws show EB Europe's control over EB Ukraine, including overseeing the day-to-day activities of EB Ukraine, keeping all of EB Ukraine's after-tax profits, hiring and firing EB Ukraine management, setting compensation for EB Ukraine employees, and selecting EB Ukraine's organizational structure and amending its bylaws. Saletech contends these facts establish EB Ukraine is the alter ego of one or more of the EB entities and, at minimum, support denial of the motion to dismiss count V.

¶ 29     Although Saletech's complaint alleges EB Europe and EB Ukraine commingled funds "as a means of defrauding creditors," the complaint lacks factual allegations to support that conclusory statement. In its brief, Saletech refers to an affidavit from Simon Gordon but, as previously discussed, in deciding a section 2-615 motion, the trial court may not consider affidavits, products of discovery, documentary evidence not incorporated into the pleadings as exhibits, or other evidentiary materials. *Cwikla*, 345 Ill. App. 3d at 29. Thus, the trial court did not err in dismissing count V of Saletech's amended complaint in the absence of factual allegations to warrant piercing the corporate veil.

¶ 30                                 Promissory Estoppel

¶ 31     Next, Saletech contends the trial court erred in dismissing count VI because it properly stated a claim for promissory estoppel against EB Inc. To establish a claim for promissory estoppel, a plaintiff must prove that (i) defendant made an unambiguous promise to plaintiff, (ii) plaintiff relied on that promise, (iii) plaintiff's reliance was expected and foreseeable by defendants, and (iv) plaintiff relied on the promise to its detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009) (citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10 (1990)). Saletech alleges it relied on EB Inc.'s promise that the terms of the exclusive distributorship agreement would be honored if Saletech agreed to assist EB Inc. and EB Europe in their investigation of EB Ukraine management. Saletech claims this promise states a claim for promissory estoppel.

¶ 32     In response, defendants argue Saletech cannot state a claim for promissory estoppel as a matter of law because promissory estoppel only applies in the absence of a contract.

¶ 33     " '[P]romissory estoppel is a doctrine under which the plaintiff may recover without the presence of a contract.' " *Newton*, 233 Ill. 2d at 53 (quoting *Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.*, 90 Ill. App. 3d 768, 770 (1980)). Thus, a party will generally be barred from seeking redress under the doctrine of promissory estoppel "where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for [a] contract." *Prentice v. UDC Advisory Services, Inc.*, 271 Ill. App. 3d 505, 512 (1995). This is because promissory estoppel provides a means to enforce promises unsupported by consideration; "[i]t is not intended 'to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.' " (Internal quotation marks omitted.) *Id.* (quoting *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 237 (1992)).

¶ 34     The performance giving rise to Saletech's detrimental reliance in the promissory estoppel claim is not the same performance that supplied the consideration for the contract. Saletech alleges it agreed to assist defendants with their investigation of EB Ukraine improprieties in exchange for a new management team honoring the terms of the agreement. Saletech's assistance in the investigation could not have been part of the consideration for the distribution agreement when Saletech contacted the management of EB Inc. and EB Europe seeking recourse. Thus, the existence of the distribution agreement itself bars Saletech's claim for promissory estoppel.

¶ 35                                 Unjust Enrichment

¶ 36     Finally, we address the claim for unjust enrichment against EB Inc. and EB Europe. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly

retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Even when a person has received a benefit from another, he or she is liable for payment "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." (Internal quotation marks omitted.) *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004). Unjust enrichment does not constitute an independent cause of action. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) (citing *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631 (2008)). Rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence" (internal quotation marks omitted) (*Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995)), or, alternatively, it may be based on contracts which are implied in law. *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425 (1998).

¶ 37   Saletech claims EB Inc. and EB Europe induced Saletech into assisting in their investigation of EB Ukraine's management and then "refus[ed] to honor the terms of the agreements." But Saletech fails to articulate what benefit defendants obtained to Saletech's detriment. For example, Saletech does not allege that it paid expenses incurred by a defendant. It was Saletech who contacted EB Inc. and EB Europe after EB Ukraine breached the exclusive distribution agreement; it was Saletech who requested help and offered to participate in the investigation for its own benefit. In the absence of allegations that defendants obtained any benefit from Saletech's assistance in the investigation, the claim for unjust enrichment fails as a matter of law.

¶ 38                                    CONCLUSION

¶ 39   The judgment of the circuit court is affirmed.

¶ 40   Affirmed.