2021 IL App (1st) 190560-U
Order filed: June 18, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-0774

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| RADARSAT MEDIA, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Cross-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| TATY DEVELOPMENT, INC. and | ) | |
| TATY CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendants-Cross-Appellees. | ) | |
| _____ | ) | 17 L 013279 |
| TATY DEVELOPMENT, INC., and | ) | |
| TATY CONSTRUCTION, INC., | ) | |
| | ) | |
| Counter-Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RADARSAT MEDIA, INC., | ) | Honorable |
| | ) | James E. Snyder, |
| Counter-Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Plaintiff and defendants filed an appeal and cross-appeal from the court's judgment awarding each of the parties some of their requested damages for breach of contract and denying defendants' motion to dismiss plaintiff's complaint as a sanction for a discovery violation. We affirmed on the appeal and on the cross-appeal, finding that the court's factual findings were not against the manifest weight of the evidence and that the court did not abuse its discretion in denying the sanctions motion.

¶ 2    Defendants, Taty Development, Inc. and Taty Construction, Inc., retained plaintiff, Radarsat Media, Inc., as a subcontractor for two construction projects: the first for the construction of certain commercial luxury condominiums and the second for the construction of an apartment building. Plaintiff subsequently brought an action against defendants for breach of contract and *quantum meruit* in connection with defendants' alleged failure to pay plaintiff for all of its work. Defendants counterclaimed for breach of contract, unjust enrichment, and set-off in connection with plaintiff's alleged failure to timely perform all the work for which defendants paid them. Following a bench trial, the circuit court entered a written order awarding plaintiff $8,596. The court subsequently granted plaintiff's motion for reconsideration in part, noting that the written order did not accurately reflect its oral judgment, and awarded plaintiff $43,304 on its breach of contract claims and awarded defendants $1,200 on their counterclaim for breach of contract.

¶ 3    On appeal, defendants contend that the court erred by: (1) failing to award them damages in the amount of $57,200 attributable to plaintiff's delay in timely completing its work on the condominium and apartment projects; (2) failing to award them a setoff against the judgment awarded in plaintiff's favor; and (3) failing to dismiss plaintiff's complaint and enter a default judgment on their counterclaim as a sanction for a discovery violation. On cross-appeal, plaintiff contends the court erred by failing to award it damages for defendants' refusal to pay it for the extra work performed at the condominium and apartment projects at the direction of defendants' agent. We affirm on the appeal and on the cross-appeal.

¶ 4     In its amended complaint, plaintiff alleged that on or about September 9, 2016, it entered into a written agreement with defendants whereby plaintiff agreed to provide construction and interior rehab services on a 13-unit apartment building at 7626-7628 South Drexel Avenue (the Drexel property).

¶ 5     Plaintiff and defendants also entered into four written contracts in 2016 and 2017 whereby plaintiff would provide internal plumbing, external plumbing, drywall installation, and steam shower installation for an eight-unit condominium property at 20 North Loomis Avenue (the Loomis property).

¶ 6     From September 2016 through August 2017, plaintiff provided carpentry, plumbing, electrical, drywall, and painting services to the Drexel property in accordance with the Drexel contract. From June 2017 through August 2017, plaintiff performed extra work and services at the Drexel property at defendants' specific request, for which defendants agreed to pay plaintiff on a time and materials basis.

¶ 7     From July 2016 through September 2017, plaintiff performed all internal and external plumbing work on the Loomis property pursuant to the Loomis plumbing contracts and also performed extra, out-of-scope plumbing work at defendants' request. Defendants agreed to compensate plaintiff for its extra plumbing work on the Loomis property on a time and materials basis.

¶ 8     From October 2016 through July 2017, plaintiff provided drywall services on the Loomis property pursuant to the Loomis drywall contract. In May and June 2017, plaintiff provided extra, out-of-scope drywall services on the Loomis property at defendants' request. Defendants agreed to pay plaintiff on a time and materials basis for the extra drywall work.

¶ 9    From January 2017 through July 2017, plaintiff performed its steam shower installation work pursuant to the Loomis steam shower contract.

¶ 10    In count I of its amended complaint, plaintiff alleged that defendants breached the Drexel contract by failing to fully compensate it for all the labor and materials provided to the Drexel property and by failing to compensate it for the extra work on the Drexel property.

¶ 11    In count II, plaintiff realleged the allegations of count I and sought recovery under a theory of *quantum meruit*.

¶ 12    In counts III and IV, plaintiff alleged that defendants breached the Loomis internal and external plumbing contracts by failing to compensate it for the labor and materials provided pursuant to those contracts and by failing to pay it for the extra, out-of-scope plumbing work.

¶ 13    In count V, plaintiff alleged that defendants breached the Loomis drywall contract by failing to fully compensate it for the work performed under that contract including the extra drywall work performed at defendants' request.

¶ 14    In count VI, plaintiff alleged that defendants breached the Loomis steam shower contract by failing to fully compensate it for the work performed under that contract.

¶ 15    In count VII, plaintiff realleged the allegations of counts III-VI relating to defendants' failure to fully compensate it for the work performed on the Loomis property and sought recovery under a theory of *quantum meruit*.

¶ 16    Defendants filed a seven-count counterclaim seeking recovery for plaintiff's alleged breaches of the Loomis and Drexel contracts. In count I for plaintiff's breach of the Loomis drywall contract, defendants alleged that plaintiff misrepresented that it installed 2,460 sheets of drywall for which defendants paid $63,960. In fact plaintiff only installed 1,650 sheets of drywall, for

which $42,900 should have been charged, meaning that defendants were overcharged and damaged in the amount of $21,060.

¶ 17    In count II, defendants alleged that all payments for the Loomis contracts were administered through First American Title Company (FAT) and that in order to receive payment, plaintiff had to submit lien waivers to FAT. Plaintiff breached the Loomis internal plumbing contract by submitting lien waivers to FAT that were improper and inaccurate and by failing to fully and timely perform the work and pay its subcontractors.

¶ 18    In count III, defendants alleged that plaintiff breached the Loomis external plumbing contract by failing to fully and timely perform the work.

¶ 19    In count IV, defendants alleged that plaintiff breached the Drexel contract by failing to complete work related to the HVAC, electrical, drywall, plumbing, paint, floors, carpentry, and intercom.

¶ 20    In counts V and VI for unjust enrichment, defendants alleged that they overpaid plaintiff for work performed at the Loomis and Drexel properties and that plaintiff would be unjustly enriched if it were able to retain the overpayments. Plaintiff also failed to fully and timely play its subcontractors, resulting in work delays that further damaged defendants.

¶ 21    In count VII for set off, defendants alleged that plaintiff's claims under its breach of contract action should be setoff by the more than $280,000 which defendants overpaid plaintiff and/or paid to hire new contractors to complete plaintiff's work.

¶ 22    The circuit court held a bench trial over three days between September 30, 2019, and October 2, 2019, and heard testimony from 16 witnesses. In their briefs on appeal, the parties only reference small portions of some of the witness testimony. We will discuss the testimony later in this order when analyzing the issues on appeal.

¶ 23 On October 2, 2019, the circuit court entered a written order stating:

"This cause coming to be heard for bench trial, the court hearing evidence and being fully advised in the premises, it is hereby ordered: judgment is entered for plaintiff Radarsat Media, Inc. and against Taty Development, Inc. and Taty Construction, Inc., jointly and severally for $8,596."

¶ 24 Plaintiff filed a motion for reconsideration. On May 26, 2020, the circuit court entered a written order stating:

"This matter comes before the Court on Plaintiff's motion for reconsideration. The Court, being fully advised, states as follows:

On review of the transcript of the proceedings, there was a judgment for the Plaintiff in part of claim on Count I for $27,000, a judgment for the Plaintiff on Count II for $16,304 and a judgment against the Plaintiff/Counter-Defendant in favor of the Defendant/Counter-Plaintiff for $1,200.

Judgment should have been entered on each of those counts. The Clerk can correct the court record and indicate those judgment amounts and findings on those counts for the proper parties. The net effect of those judgments should total as:

Count I                     $27,000

Count II                    $16,304

Counter Plaintiff Judgment  -$1,200

TOTAL Plaintiff             $42,104"

¶ 25 The transcript of the oral findings referenced by the circuit court in which it granted judgment for plaintiff on count I for $27,000 and on count II for $16,304 and entered judgment for defendants on their counterclaim for $1,200, is not contained in the record on appeal.

¶ 26 On June 23, 2020, defendants appealed the May 26 order. On June 24, 2020, plaintiff cross-appealed the May 26 order.

¶ 27 Defendants' first argument on appeal is that the circuit court erred by failing to award them any damages for plaintiff's delay in completing its work on the Drexel project. Where an award of damages is made after a bench trial, the standard of review is whether the court's judgment is against the manifest weight of the evidence. *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13. A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings are unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 28 Our review of defendants' argument is hindered by their failure to provide us with the transcript of the circuit court's oral factual findings, which were referenced in the May 26, 2020, order that granted plaintiff's motion to reconsider in part and that corrected the written judgment so as to accord with the oral findings. Without knowing what the court's factual findings were with respect to plaintiff's alleged delay in completing work on the Drexel project, we cannot review whether those findings were against the manifest weight of the evidence. As the appellants, defendants bear the burden of providing a sufficiently complete record to support their claim of error and in the absence of such a record on appeal, we presume that the order entered by the circuit court was in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-392 (1984). Any doubts arising from the incompleteness of the record are resolved against the appellant. *Id.* at 392.

¶ 29 Even addressing defendants' argument in the absence of the court's oral factual findings, we still affirm. Defendants argue that in its responses to their requests to admit, plaintiff admitted that it did not complete either Phase I or Phase II of the Drexel project by the contract deadlines

and that at trial, plaintiff's principal, Rafal Stykowski, again admitted that plaintiff did not complete Phase II of the Drexel project by the contract deadline. Defendants contend that the total delay was 286 days and that pursuant to the Drexel contract, they were entitled to a penalty payment of $200 per day for each of the 286 days of delay caused by plaintiff, amounting to a total of $57,200, which the court should have awarded them.

¶ 30    However, in its response to defendants' request to admit, plaintiff stated that it failed to complete its work on the Drexel project by the Phase I and Phase II deadlines because cabinets and other items necessary for completion of the work were not delivered to it until after the deadlines. At trial, defendants' principal, Calin Paunescu, admitted to the delay in the delivery of "the kitchens" to plaintiff until after the Phase I and Phase II deadlines. Such evidence was sufficient to show that the delay in completion of the Drexel project was not attributable to plaintiff and therefore that defendants were not entitled to any damages from plaintiff for the delay.

¶ 31    Next, defendants contend that the circuit court erred by failing to dismiss plaintiff's complaint and enter default judgment on their counterclaim as a sanction under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) for plaintiff's failure to timely comply with discovery. Rule 219(c) provides that if a party unreasonably fails to comply with discovery, the trial court may: debar the offending party from maintaining any particular claim or counterclaim related to that discovery issue; bar a witness from testifying about that issue; or enter a default judgment or dismissal order against the offending party. *Id.*

¶ 32    The sanctions imposed must be just and proportionate to the offense. *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 464 (2006). Dismissal with prejudice is a drastic sanction that the courts are reluctant to impose and is to be employed only as a last resort to enforce the rule of discovery and only when a party has shown a deliberate and contumacious disregard

for the authority of the court. *Id.* at 465. The determination of a sanction is specific to the circumstances of the case (*id.*) and will not be overturned absent a clear abuse of discretion. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 620-21 (2007).

¶ 33   The alleged discovery violation at issue here related to plaintiff's late disclosure of the so-called "final" lien waiver it provided to FAT on July 14, 2017, which stated that plaintiff had provided labor and material for the plumbing work at the Loomis project in the amount of $728,100 and had been paid $531,640. Plaintiff was seeking a partial payment of $16,100 from FAT, leaving a balance due of $180,360.

¶ 34   In May 2018 and in January 2019, defendants served plaintiff with requests for production of documents seeking all lien waivers that plaintiff had submitted to FAT relating to the Loomis project. In response, plaintiff provided defendants with all such lien waivers except for the final July 14, 2017, lien waiver.

¶ 35   In February 2019, plaintiff issued a subpoena to FAT requesting a copy of its entire file relating to the Loomis project. On February 22, 2019, defendants served plaintiff with a third request for documents, seeking a copy of the FAT file. On March 11, 2019, plaintiff sent defendants the FAT file, which did not include the final lien waiver, and on April 10, 2019, plaintiff supplemented its responses with additional documents that did not include the final lien waiver.

¶ 36   On August 30, 2019, plaintiff submitted to defendants its list of trial exhibits, including Exhibit 14, which was titled "First American Title Company lien waiver documentation." Plaintiff's Exhibit 14 did not contain the final lien waiver.

¶ 37   On September 23, 2019, defendants' counsel, Rakesh Khanna, discovered a check dated July 14, 2017, made out from FAT to plaintiff which indicated to him that there should be a

corresponding lien waiver for that date. Khanna contacted plaintiff's counsel, Paul Porvaznik, who subsequently emailed Khanna a copy of the final lien waiver for the first time.

¶ 38     Defendants filed a motion for sanctions arguing for dismissal of plaintiff's complaint and entry of a default judgment on their counterclaim due to plaintiff's belated production of the final lien waiver. At the hearing held on the motion, Porvaznik and his co-counsel, Christine McClernon, explained that their client, plaintiff, only gave them two pages of lien waivers related to the Loomis project, neither of which contained the final lien waiver. Porvaznik produced the two pages of lien waivers to defendants in response to their initial requests for production of documents in May 2018 and January 2019.

¶ 39     Porvaznik further explained that in March 2019, he subpoenaed FAT and received 1,153 pages of documents, including draws paid to suppliers, contractors, and subcontractors on the Loomis project. None of the 1,153 pages of documents produced by FAT to Porvaznik contained the final lien waiver. Porvaznik produced the 1,153 pages of documents to defendants. Six weeks later, in April 2019,  Porvaznik examined the documents produced by FAT and noticed a "gap" between Draw 27 and Draw 30.  Porvaznik notified FAT, which sent him 50 additional documents on April 4, 2019, including (for the first time) the final lien waiver. Through "oversight," Porvaznik did not immediately notify defendants of his receipt of the final lien waiver.

¶ 40      McClernon explained that in August 2019, she prepared Plaintiff's Exhibit 14, the "First American Title Company lien waiver documentation" which did not include the final lien waiver because Porvaznik had not made her aware of it.

¶ 41     Porvaznik produced the final lien waiver to defendants in September 2019 after Khanna contacted him regarding some possible missing documents from the FAT file. Porvaznik reiterated

to the court that his failure to immediately produce the final lien waiver to defendants upon his receipt of it in April 2019 was an "honest mistake" and unintentional.

¶ 42    The court inquired of Khanna as to the relevance of the final lien waiver. Khanna asserted that the final lien waiver showed that every single invoice prior to the final invoice had been paid to plaintiff, meaning that defendants owed no further monies to plaintiff. Porvaznik responded that the final lien waiver showed there was still an outstanding balance of $180,360 for plumbing services provided by plaintiff, and that the final lien waiver also did not apply to the drywall services for which monies were still owed to plaintiff.

¶ 43    The circuit court determined that Porvaznik's failure to immediately disclose the final lien waiver to defendants after his receipt of it in April 2019 was a mistake and that it was not purposefully withheld and that the significance of the final lien waiver (*i.e.*, how much monies were owed to plaintiff) was for the jury to decide. The court further noted that the appropriate sanction for Porvaznik's inadvertent failure to timely disclose the final lien waiver was not to dismiss plaintiff's complaint and grant a default judgment for defendants on their counterclaim but to "try to get [defendants] a fair trial on this." Ordinarily, the court would consider not allowing the final lien waiver to come in as a sanction, but in this case, defendants wanted the final lien waiver to come in to show that plaintiff was not entitled to all the damages it was asserting in its complaint. The court allowed defendants to introduce the final lien waiver at trial, gave them the option of conducting additional discovery and filing a motion for summary judgment, and it also granted defendants their attorney fees in preparing the sanctions motion.

¶ 44    We find no clear abuse of discretion in the court's order disposing of defendants' sanctions motion. The court found Porvaznik's explanations for the delay in turning over the final lien waiver to be credible and indicative of no deliberate and contumacious disregard of its authority and that

the best way to give defendants a fair trial was to offer the remedies described above. Generally, in a trial context, we have held that the trial court acting as a fact finder is in a better position than this court to weigh credibility as it actually saw and heard the witnesses, whereas we are limited to reviewing the "cold" written record. See *e.g.*, *Racky v. Befor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 107.The same rationale applies here. Having seen and heard Porvaznik, the circuit court was in a better position than this court to weigh his credibility and determine the appropriate remedies for his inadvertent discovery violation and we will not substitute our judgment therefor.

¶ 45    Defendants also argue that McClernon committed a fraud on the court by representing that Plaintiff's Exhibit 14 contained all the lien waivers when, in fact, it did not include the final lien waiver. Defendants cite out-of-state cases holding that such fraud merits dismissal of plaintiff's cause of action. As discussed earlier in this order, McClernon explained that when she prepared Plaintiff's Exhibit 14, Porvaznik had not yet made her aware of the final lien waiver. The court committed no abuse of discretion in finding that McClernon's failure to include the final lien waiver in Plaintiff's Exhibit 14 was a mistake and not fraud and that dismissal of plaintiff's complaint was not an appropriate sanction.

¶ 46    Next, defendants argue that the circuit court erred by failing to grant them a setoff of $69,769.91 from the judgment entered against them on plaintiff's breach of contract action. The term "setoff" is used in two distinct ways. One type of setoff refers to when a defendant has a distinct cause of action against the same plaintiff who filed suit against him and is subsumed procedurally under the concept of counterclaim. *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2010). The other type of setoff refers to defendant's request for a reduction of the damages award because a third party has already compensated plaintiff for the same injury. *Id.*

¶ 47    The setoff at issue here is of the first type, as it was brought as a counterclaim against plaintiff. Specifically, defendants claim that plaintiff overcharged them for plumbing supplies which one of plaintiff's suppliers, Crawford Supply Group, Inc. (Crawford) provided to another subcontractor, DND Plumbing, Inc. (DND) and that the amount of the overcharge should be used to setoff plaintiff's judgment. In support, defendants note that the final lien waiver that plaintiff provided to FAT on July 14, 2017, shows that defendants gave plaintiff $195,948.16 for payment to Crawford for plumbing supplies, but that Crawford subsequently sent a mechanics lien notice stating that it had only received $95,545.24 and was owed an additional $30,633.01. At trial, the parties entered into a written stipulation that plaintiff subsequently paid Crawford the $30,633.01 due under the mechanics lien notice. That leaves $69,769.91 remaining from the original $195,948.16 which defendants gave to plaintiff to pay to Crawford. Defendants contend that the $69,769.91 constitutes an overpayment by them to plaintiff and should have been returned. Defendants request that the judgment entered against them on plaintiff's breach of contract action be setoff by the $69,769.91 overpayment[1].

¶ 48    Although the ultimate determination of whether defendants are entitled to a setoff is a question of law subject to *de novo* review (*id.* at 115-116), the resolution of this issue necessarily involves a factual finding as to whether defendants overpaid plaintiff $69,769.91 for the plumbing supplies which Crawford provided to DND. As discussed, though, defendants did not provide us

---

[1] In their appellants' brief and at points in their supplemental reply brief, defendants argue for a setoff of $100,402.92, which represents the difference between the $195,948.16 they provided to plaintiff to pay over to Crawford for plumbing supplies and the $95,545.24 represented to have been paid to Crawford pursuant to the final lien waiver. On pages 11-12 of their supplemental reply brief, though, defendants acknowledge that the additional $30,633.01 payment made by plaintiff to Crawford pursuant to the mechanics lien notice lowers the alleged setoff amount to $69,769.91.

with a transcript of the court's oral factual findings, and therefore any doubts are resolved against them. *Foutch*, 99 Ill. 2d at 392.

¶ 49    Even addressing the issue on the merits, we still affirm.

¶ 50    Defendants argue that the final lien waiver and the written stipulation amount to a judicial admission by plaintiff that of the $195,948.16 it received from defendants for payment to Crawford for plumbing supplies, plaintiff only made two payments to Crawford of $95,545.24 and $30,633.01, for a total of $126,178.25, meaning that defendants overpaid plaintiff $69,769.91.

¶ 51    A judicial admission, which is conclusively binding, is a deliberate, clear, unequivocal statement by a party about a concrete fact within that party's knowledge. *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). Although the final lien waiver and written stipulation show that plaintiff made two payments to Crawford in the amounts of $95,545.24 and $30,633.01 for plumbing supplies, they make no deliberate, clear, unequivocal statement amounting to a judicial admission that those were the only payments plaintiff ever made to Crawford or that plaintiff kept the remaining $69,769.91 it received from defendants without ever paying it to Crawford. See *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 118 (a judicial admission cannot be a matter of inference or uncertain summary). Accordingly, we must look elsewhere in the record for evidence as to whether plaintiff paid over to Crawford the entire $195,948.16 it received from defendants or whether plaintiff retained $69,769.91 of that amount for itself.

¶ 52    Plaintiff directs us to the trial testimony of its principal, Stykowski, who testified that the *complete* balance of $195,948.16 which defendants provided plaintiff to pay Crawford for plumbing supplies was in fact paid to Crawford through DND. Stykowski testified:

"Q. Now, on this lien waiver, you have a line item here as of July 14, 2017, for Crawford. And on that it says the amount paid to date was $195,948.16, isn't that correct?

A. Correct.

Q. And it's your testimony here today that as of July 14, 2017, [plaintiff] paid Crawford $195,948.16 for the supplies that Crawford provided on Loomis?

A. Correct. I paid to DND and DND paid to Crawford."

¶ 53    Stykowski's testimony was sufficient for the court to find that *all* of the $195,948.16 which defendants gave to plaintiff for payment to Crawford for plumbing supplies was ultimately paid to Crawford through DND, meaning that there was no overpayment by defendants and therefore that they were not entitled to a setoff.

¶ 54    Next, we address plaintiff's cross-appeal. Plaintiff contends that the court erred in rejecting its contention that defendants breached the Loomis and Drexel contracts by failing to pay plaintiff hundreds of thousands of dollars for extra work it performed at those properties pursuant to verbal change orders made by defendants' property manager, Richard Swiech. Plaintiff acknowledges that the contracts expressly provide that all change orders must be in writing but argues that it relied on Swiech's apparent authority to make verbal change orders and that defendants waived the requirement that the change orders be in writing. The existence and scope of an agency relationship is typically a question of fact (*McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 64) and the court's determination thereof following a bench trial will not be reversed on appeal unless against the manifest weight of the evidence. *Staes and Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35.

¶ 55    To hold a principal liable under an apparent agency theory, the aggrieved third party must prove: the principal's consent to or knowing acquiescence in the agent's exercise of authority; the third party's knowledge of the facts and good-faith belief that the agent possessed such authority; and the third party's detrimental reliance on the agent's apparent authority. *Saletech, LLC v. East*

*Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 14. With respect to the first element, the principal's consent or knowing acquiescence in the agent's exercise of authority, plaintiff contends that the record on appeal contains five emails showing Swiech's principal, Paunescu, consenting to Swiech making verbal change orders to the Loomis and Drexel contracts. Instead of citing us the specific pages of the record where those five emails are located, plaintiff informs us that they can be found somewhere on pages 1146-1290 of volume 2. The failure to cite to the specific pages of the record where the emails may be found violates Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (providing that "reference shall be made to the pages of the record on appeal where evidence may be found"). We are not required to comb the record searching for evidence supporting the appellant's argument. See *Thrall Car Manufacturing Co.*, 145 Ill. App. 3d 712, 719 (1986) ("[t]he appellate court is not a depository in which the appellant may dump the burden of argument and research"). Plaintiff's argument could be found forfeited for its failure to comply with Rule 341(h)7). *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 56    Despite plaintiff's failure to comply with Rule 341(h)(7), we have examined pages 1146-1290 of volume 2 of the record and found the referenced emails, one from December 7, 2016, two from February 14, 2017, and February 20, 2017, one from March 23, 2017, and one from May 8, 2017. The December email was from Swiech to an unidentified person named Mayra Quintana and merely states that plaintiff "is going to install the alarm," but does not indicate in any way that the installation of the alarm was a change made verbally by Swiech which was then authorized by Paunescu. The February emails show Paunescu communicated *directly* with plaintiff to make certain changes to the Loomis and Drexel properties, but they do not show him authorizing any verbal change orders made by Swiech. The March email is from Swiech to Quintana and Paunescu and references a change order to the interior plumbing contract at the Loomis property, but it does

-16-

not indicate that the change order was made verbally by Swiech and then authorized by Paunescu. The May 8 email is from an unidentified woman named Maria Maris to Swiech but it does not indicate any verbal change orders by Swiech that were then authorized by Paunescu. Thus, none of the five emails referenced by plaintiff show that Paunescu consented or knowingly approved of any verbal change orders made by Swiech.

¶ 57    Plaintiff cites the testimony of Phyllis Zecevic, the owner of DND, but she merely testified that she had worked on projects in the past where verbal change orders were made; she did not testify to Paunescu approving verbal change orders on the Loomis and Drexel projects at issue here. Plaintiff also cites the testimony of its owner, Rafal Stychowski, but the cited portion of his testimony does not relate to Paunescu's approval of any of Swiech's verbal change orders.

¶ 58    Finally, plaintiff cites Swiech's testimony that Paunescu approved of his verbal change orders on the Loomis and Drexel projects. Paunescu testified to the contrary, stating that Swiech could make a change order only if he authorized it "in writing." Paunescu further testified:

> "Q. So if Richard Swiech says that change orders were verbally approved routinely on Loomis, you're saying that that's not accurate?
>
> A. Correct."

¶ 59    It was for the court as the trier of fact to consider the credibility of the witnesses and resolve conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 228. Paunescu's testimony was sufficient to show that he did not waive the contractual requirement that all change orders be in writing and did not consent or knowingly acquiesce in Swiech's exercise of authority in issuing the verbal change orders. The court's finding in favor of defendants on plaintiff's apparent agency theory was not against the manifest weight of the evidence.

¶ 60    Next, plaintiff cursorily contends that the court should have granted its motion to reconsider and awarded it more monies based on Swiech's apparent agency when making verbal change orders. For all the reasons discussed, the court committed no error in denying plaintiff's motion to reconsider based on its apparent agency theory of recovery.

¶ 61    For all the foregoing reasons, we affirm the circuit court.

¶ 62    Affirmed.